# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MARY T. ROESLER, | Civil No. 12-1982 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| CAROLYN W. COLVIN, *Commissioner of Social Security*, | |
| Defendant. | |

David W. VanDerHeyden, **VANDERHEYDEN LAW OFFICE**, 302 Elton Hills Drive, Suite 300, Rochester, MN 55903; and Eddy Pierre Pierre, **BINDER & BINDER, PC**, 60 East 42nd Street, Suite 520, New York, NY 10165, for plaintiff.

Ana H. Voss, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

The Commissioner of Social Security ("the Commissioner")[1] denied Plaintiff

Mary T. Roesler's application for disability insurance benefits and supplemental social

security income under the Social Security Act ("the SSA"). Roesler applied for benefits

because of a combination of physical and mental health conditions including obesity,

chronic venous insufficiency, peripheral edema, a seizure disorder, depression, and

ADHD. Roesler filed her application on November 20, 2008, alleging disability

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013 and is automatically substituted as the defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

beginning on November 13, 2008. After initial denials, a hearing was held before Administrative Law Judge Jo Ann L. Draper ("the ALJ"). The ALJ found that although some of Roesler's physical impairments qualified as "severe," Roesler had the residual functional capacity ("RFC") to perform her prior work as a customer service representative. (*See* Administrative Record ("AR") at 551-58, Oct. 29, 2012, Docket No. 7.) Therefore, the ALJ concluded that Roesler was not disabled within the meaning of the SSA.

After exhausting her administrative remedies, Roesler sought judicial review of the ALJ's decision and the parties filed cross-motions for summary judgment pursuant to D. Minn. LR 7.2. In a Report and Recommendation ("R&R") dated June 24, 2013, United States Magistrate Judge Jeffrey J. Keyes recommended denying Roesler's motion, granting the Commissioner's motion, and affirming the denial of benefits. (R&R, June 24, 2013, Docket No. 19.) The Magistrate Judge disagreed with the ALJ as to whether Roesler's mental impairments are severe, (*id.* at 24-25), but found that the ALJ properly considered Roesler's mental impairments in determining Roesler's RFC, and therefore recommended affirming the ALJ's overall conclusion that Roesler is not disabled within the meaning of the SSA, (*id.* at 25).

Roesler filed timely objections to the R&R. (Pl.'s Objections, July 8, 2013, Docket No. 21.) The objections fall into three categories: (1) whether the ALJ underestimated the impact of Roesler's mental impairments; (2) whether the ALJ erred in finding Roesler not entirely credible; and (3) whether the ALJ relied appropriately on vocational expert testimony. The Court reviews the portions of the R&R to which

Roesler objects *de novo*.  *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2.  Because the Court finds that the ALJ's decision is supported by substantial evidence on the record as a whole, the Court will overrule Roesler's objections and adopt the R&R.

**BACKGROUND**[2]

## I.    EVIDENCE OF ROESLER'S MENTAL IMPAIRMENTS

Roesler's objection regarding her mental impairments relates primarily to the ALJ's analysis of two psychologists' opinions: Dr. Bonnie J. Betts and Dr. Barbara Lowe-Fierke.  Dr. Betts treated Roesler both before and after Roesler's alleged disability onset date and Dr. Betts is the only treating physician to offer an RFC opinion.  (*See* AR at 551-58.)  In a questionnaire she completed in connection with Roesler's application, Dr. Betts indicated that she first treated Roesler on January 1, 2008 and treated her sporadically after the first three appointments.  (*Id.* at 551.)  Dr. Betts opined that Roesler was markedly limited in the "ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (*Id.* at 555.)  Dr. Betts further opined that Roesler is capable of only low stress work in a sheltered position with positive coaching.  (*Id.* at 557.)

Notes from a May 1, 2009 session with Dr. Betts are the only treatment records from after Roesler's alleged disability onset date that appear in the record.  (*Id.* at 323-

---

[2] The Court will provide only those facts necessary to understand and address Roesler's objections to the R&R.  For more extensive background, see the R&R at 2-21.

24.)  At that meeting, Roesler reported feeling "happier," having "no suicidal ideation," and experiencing "significantly decreased stress."  (*Id.* at 323.)  Dr. Betts assigned a Global Assessment of Functioning score of 75, (*id.*), which indicates that any symptoms caused by her mental impairments are transient and there is no more than slight impairment in social, occupational, or school functioning, *see* Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. Text Revision 2000).

Dr. Lowe-Fierke examined Roesler on April 22, 2009 in connection with Roesler's application and prepared a psychological evaluation for the Commissioner. (AR at 310-15.)  Dr. Lowe-Fierke's evaluation notes that Roesler stated "the reason she is applying for social security is primarily physical."  (*Id.* at 310.)  Dr. Lowe-Fierke noted that Roesler "appears able to interact with others appropriately in this superficial and brief contact situation" and that Roesler's "ability to tolerate coworkers, to handle supervision and to manage stress appears fairly intact."  (*Id.* at 314-15.)   However, Dr. Lowe-Fierke also indicated that Roesler's "attention and concentration appeared variable" and that Roesler "is likely to continue to have significant difficulties maintaining focus given her seizure disorder, and will have difficulty working with pace, persistence, and sustained concentration."  (*Id.* at 314.)

## II.    EVIDENCE RELEVANT TO ROESLER'S CREDIBILITY

The ALJ found that Roesler was not credible to the extent that Roesler's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were "inconsistent with the [RFC] assessment."  (AR 19-20.)  The ALJ was influenced in part by notes from Drs. Betts and Lowe-Fierke, as well as Roesler's testimony, all of

which indicate that Roesler is capable of completing a variety of household tasks and daily activities.  For example, Dr. Lowe-Fierke's notes indicate that Roesler "can cook large meals and has no problem timing things so that everything is done at the same time," "has no problems with finishing a task once she starts something, and has no problems being distracted by other tasks." (*Id.* at 312.)  Roesler also told Dr. Lowe-Fierke that she "is able to do all the household cleaning, but at a slower pace as she has to rest more often." (*Id.* at 312.)  Roesler's primary daily activity appears to be watching television, though she also reads, crochets, writes letters, and uses the computer to research topics of interest and plays games. (*See id.* at 42-43, 312, 323.)

As to why Roesler quit her most recent job as a customer service representative, Roesler testified at the hearing that it was "due to the depression and the problems I was having with the coworkers and that I needed time to unwind." (*Id.* at 36.)  On the other hand, Roesler told Dr. Lowe-Fierke that she quit "because she was not making her quota of monthly sales, she had 'some outbursts' . . . , and because she was having absence seizures of up to 6 minutes during phone calls." (*Id.* at 311.)  Roesler further stated that "she cannot get a job now primarily because of her epilepsy and her physical limitations: needing a job where she can be seated the majority of the time." (*Id.* at 311.)

## III.   VOCATIONAL EXPERT TESTIMONY

At the hearing, the ALJ asked a vocational expert a series of hypothetical questions. (*Id.* at 47-51.)  Most pertinently, the ALJ presented a hypothetical individual of Roesler's age, education, and work history, who could not be exposed to hazardous working conditions, could not complete highly detailed, highly complex tasks, was

limited to sedentary work, who needed to change postural positions by standing and stretching for two or three minutes out of every thirty, and who needed to elevate her legs to chair level for ten to fifteen minutes, three to four times per day. (*Id.* at 47-51.) The vocational expert opined that such an individual would be able to do Roesler's past work as a customer service representative, but that the need to elevate her legs would limit her access to at least fifty percent of such jobs. (*Id.* at 50-51.) This opinion was the basis for the ALJ's conclusion that Roesler was capable of performing her past work as a customer service representative. (*Id.* at 21.)

## ANALYSIS

## I.     STANDARD OF REVIEW

### A.     Disability under the SSA

The SSA provides benefits to people who are aged, blind, or who suffer from a physical or mental disability. *See Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992); *see also* 42 U.S.C. § 1382(a). The claimant has the burden of persuasion to prove that she is qualified for social security benefits. *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)) (describing the burdens of persuasion and production under the SSA)).

"Disability" under the SSA means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be eligible for benefits, an individual's impairments must be of "such severity that he is not only unable

to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential analysis to determine whether a claimant is disabled, considering (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or is equivalent to a listed impairment;[3] (4) whether the claimant has sufficient residual functional capacity to return to her past work; and (5) whether the claimant can do other work existing in significant numbers in the regional or national economy.   20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).   A claimant is considered disabled if he or she suffers from a listed impairment or a disorder that is the medical equivalent of a listed impairment.   *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   In addition, a claimant who lacks the RFC to conduct work on a sustained basis due to his or her impairments is considered disabled. *Id.* §§ 404.1545, 416.945.

### B.     Substantial Evidence on the Record as a Whole

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009).   "Substantial

---

[3] A "listed impairment" is an impairment set out in SSA regulations.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). "Substantial evidence on the record as a whole," however, requires more than merely searching for evidence that supports the Commissioner's decision. *See Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). Rather, "the substantiality of evidence must take into account whatever evidence fairly detracts from its weight." *Minor*, 574 F.3d at 627. Nonetheless, deference is still owed to the Commissioner's decision and the Court "may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." *Young*, 221 F.3d at 1068. If two inconsistent conclusions can reasonably be drawn from the record and one represents the Commissioner's findings, the Court must affirm the decision. *Id.*

## II.     ROESLER'S OBJECTIONS

Applying the framework explained above, the ALJ found that (1) Roesler had not engaged in substantial gainful activity since the alleged onset date; (2) Roesler's severe impairments are "morbid obesity; chronic venous insufficiency and peripheral edema; history of epilepsy; degenerative joint disease of the right knee and history of musculoskeletal pain," but that Roesler's mental impairments are non-severe; (3) Roesler does not have a listed impairment or its equivalent; (4) Roesler has the RFC to perform sedentary work that is not highly detailed or highly complex, and is therefore capable of

performing her past work as a customer service representative.[4]   (AR 15-21.)   The

Magistrate Judge disagreed with the ALJ as to whether Roesler's mental impairments are

severe, (R&R at 24-25), but found that the error was harmless because the ALJ properly

considered Roesler's mental impairments in determining Roesler's RFC, (*id.* at 25).

Roesler's objections fall into three categories and the Court will address them in turn.

### 1.      Roesler's Mental Impairments

The Magistrate Judge concluded that the ALJ erred in finding Roesler's mental

impairments non-severe, but also concluded that the error was harmless because the

ALJ's RFC determination, which took Roesler's mental impairments into account, was

supported by substantial evidence.  *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To

show an error was not harmless, [a claimant] must provide some indication that the ALJ

would have decided differently if the error had not occurred.").  Roesler objects that the

ALJ gave too little weight to the opinion of Dr. Betts and misconstrued the opinion of

Dr. Lowe-Fierke in finding that Roesler was capable of performing sedentary work with

lesser or moderately detailed requirements.

As to Dr. Betts, a treating physician's opinion is entitled to controlling weight

when it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] record."

*Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007) (internal quotation marks omitted).

---

[4] Because the ALJ found that Roesler was not disabled on the fourth step of the analysis, the ALJ did not consider the fifth step.

The ALJ found that Dr. Betts' RFC opinion was not "adequately supported by the documented treatment record" and therefore accorded it little weight.  (AR 20.)  The Magistrate Judge agreed with the ALJ's assessment.  (R&R at 28.)

Dr. Betts opined in a questionnaire that Roesler was markedly limited in her ability to complete a normal workweek without interruptions and also indicated that Roesler demonstrated appetite disturbance with weight change, social withdrawal or isolation, decreased energy, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, and feelings of guilt/worthlessness.  (AR 552, 555.)  However, the only treatment record from Dr. Betts indicates that Roesler's stress had decreased significantly, that she was using the computer to do research and play mentally stimulating games, and that she was looking forward to several activities in her life.  (AR 323.)  Dr. Betts also assigned a Global Assessment of Functioning score of 75.  (*Id.*)  The ALJ's determination that Dr. Betts' opinion conflicted with this largely positive treatment record is reasonable and supported by substantial evidence.  Further, as the Magistrate Judge noted, the ALJ found that Roesler was capable of only moderately detailed work, which is consistent with Dr. Betts' opinion that Roesler is only mildly or moderately limited in several areas, including the ability to understand and remember detailed instructions and the ability to maintain attention and concentration for extended periods.  (AR 554.)[5]

---

[5] Roesler also argues that the ALJ erred by failing to indicate exactly what weight she gave Dr. Betts' opinion and failing to discuss each factor in 20 C.F.R. § 404.1527(c).  But the regulations do not strictly require the ALJ to explicitly discuss each factor.  Rather, the regulations assure that the ALJ "will always give good reasons . . . for the weight" given to a

(Footnote continued on next page.)

As to Dr. Lowe-Fierke, Roesler argues that the ALJ's statement that she gave Dr. Lowe-Fierke's opinion "some weight" cannot be reconciled with the ALJ's RFC finding.  (AR 20.)  Roesler first insists that Dr. Lowe-Fierke opined that Roesler was incapable of more than "superficial and brief" interactions.  This appears to be a misrepresentation of Dr. Lowe-Fierke's notes, which in fact state that Roesler "appears able to interact with others appropriately in this superficial and brief contact situation." Dr. Lowe-Fierke did not state that Roesler was incapable of more than superficial and brief interactions.  Second, Roesler focuses on Dr. Lowe-Fierke's assessment that Roesler's attention and concentration were "variable."  However, Roesler provides no support for the argument that a person with variable attention and concentration is incapable of successfully completing sedentary, moderately detailed work.

Having considered Roesler's objections and reviewed the record, the Court finds, regardless of whether Roesler's mental impairments are considered severe or non-severe, substantial evidence on the record as a whole supports the ALJ's RFC determination.

## 2.      Roesler's Credibility

The ALJ concluded that Roesler was not entirely credible because of Roesler's demonstrated ability to complete various household chores and daily activities and because of evidence that Roesler's various impairments were largely managed and some

_____

(Footnote continued.)

treating physician's opinion.  20 C.F.R.  § 404.1527(c)(2).  While it may generally be better practice to explicitly consider the various factors set forth in the regulations, the Court finds that the ALJ gave adequate reasons for not affording Dr. Betts' opinion controlling weight.

were improving.  (*See* AR 20.)  The ALJ also noted in a separate portion of her analysis that Roesler appeared to give inconsistent explanations for quitting her last job as a customer service representative.  (AR 15.) Roesler objects on the basis that the ALJ overemphasized the significance of Roesler's daily activities, erred in finding Roesler's explanations for quitting inconsistent, and failed to give Roesler appropriate credit for her long history of consistent employment.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide," *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001), and a claimant's ability to sustain daily activities is a relevant consideration in assessing credibility, *see Wagner v. Astrue*, 499 F.3d 842, 851-52 (8th Cir. 2007).  The Eighth Circuit has held, however, that an ALJ may not find that a claimant's ability to perform daily activities "to any degree is inconsistent with [her] allegations of constant, debilitating symptoms." *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (quoting *Reed v. Barnhart*, 399 F.3d 917, 922 (8th Cir. 2005)).  In other words, it is possible that a claimant who is capable of performing daily activities also suffers from intense symptoms.

Here, the Court finds that the ALJ did not rely too heavily on Roesler's ability to complete simple daily activities.  The ALJ did not overstate Roesler's capabilities and explicitly acknowledged limitations to which Roesler had testified.  (*See* AR 20.)  The ALJ reasonably determined that Roesler's ability to engage in a wide range of activities that required sustained attention called into question her claims of debilitating symptoms.

Additionally, it is not clear to what extent the ALJ's credibility determination was influenced by Roesler's various explanations for quitting her last job, but the Court finds

that it would have been reasonable to be influenced slightly by the seemingly inconsistent explanations. Roesler testified that she left her job because of depression and problems with coworkers, but the record also reflects that she left her job because she was not making her monthly quota, she had some "outbursts," and she had "absence seizures" during phone calls. Roesler also told Dr. Lowe-Fierke that the primary impediment to her finding a job was her epilepsy and her need to be seated a majority of the time. While there is overlap between the various explanations for leaving her prior job, the Court also sees some conflict between Roesler's testimony and her previous statements that appear in medical records. To the extent that the ALJ took this into account in finding Roesler's testimony not entirely credible, it was reasonable to do so.

Finally, while Roesler's history of consistent employment is a factor that cuts in favor of the credibility of her current claim that she is unable to work, *see O'Donnell v. Barnhart*, 318 F.3d 811, 817 (8th Cir. 2003), it is one factor among many, *see Wagner*, 499 F.3d at 851. Having considered Roesler's objections and reviewed the record, the Court finds that the ALJ's credibility determination is supported by substantial evidence on the record as a whole. The record does not necessarily compel the conclusion that Roesler lacks credibility, but where the record allows more than one reasonable conclusion, the Court is not permitted to disturb the findings of the ALJ. *See Young*, 221 F.3d at 1068.

### 3.    Vocational Expert Testimony

Roesler's final objection is in fact premised entirely on her first and second objections. She argues that "for the reasons detailed in [objections] I and II, Ms. Roesler

disputes that the ALJ's finding was supported by substantial evidence" and "[t]herefore, the vocational expert's testimony in response to the flawed RFC could not be relied on." (Objections at 7-8.)  Because the Court overrules Roesler's first two objections and finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole, the Court will also overrule Roesler's third objection.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket No. 21] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated June 24, 2013 [Docket No. 19]. Accordingly, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment [Docket No. 9] is **DENIED**.

2.    Defendant's Motion for Summary Judgment [Docket No. 16] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  August 26, 2013                    s/ John R. Tunheim
at Minneapolis, Minnesota.                 _____
                                           JOHN R. TUNHEIM
                                           United States District Judge